**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

PORTO TECHNOLOGY, CO., LTD.,

and

PORTO TECHNOLOGY, LLC,

                    Plaintiffs,

          v.

CELLCO PARTNERSHIP D/B/A VERIZON
WIRELESS,

                    Defendant.

Case No. 3:12-cv-678 (HEH)

**[JURY TRIAL DEMANDED]**

## DEFENDANT CELLCO PARTNERSHIP'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS FOR LACK OF STANDING

## <u>TABLE OF CONTENTS</u>

<b>Page</b>

I.     INTRODUCTION AND SUMMARY ...............................................................................1

II.    KOREAN LAW IS IRRELEVANT TO THE TWO INDEPENDENT
GROUNDS FOR LACK OF STANDING. .........................................................................4

      A.    Porto Has No Constitutional Standing Because It Is Not An
"Exclusive Licensee." ...............................................................................................5

      B.    Porto Has Failed To Show It Has "All Substantial Rights." ....................................7

III.   PORTO'S EFFORT TO AVOID FEDERAL STANDING REQUIREMENTS
BY INVOKING KOREAN PATENT LAW FAILS...........................................................12

      A.    Porto Has Failed To Demonstrate That Korean Law Applies. ...............................13

      B.    The Court Cannot Apply Korean Law Because Porto Has Failed To
Comply With The Requirements Of Federal Rule of Civil Procedure 44.1..........15

      C.    Under Traditional Contract Law, There Is No Dispute That Porto Lacks
Standing. .................................................................................................................18

IV.   THE PATENT OWNERS ARE INDISPENSIBLE PARTIES UNDER
FEDERAL RULE OF CIVIL PROCEDURE 19................................................................19

V.    CONCLUSION.....................................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Abbott Labs. v. Diamedix Corp.*,
  47 F.3d 1128 (Fed. Cir. 1995)..........................................................................8, 9

*In re Access Beyond Techs, Inc.*,
  237 B.R. 32 (Bankr. Del., 1999) ...........................................................................18

*Alfred E. Mann Found. for Sci. Research v. Cochlear Corp.*,
  604 F.3d 1354 (Fed. Cir. 2010)............................................................................10

*AsymmetRx, Inc. v. Biocare Med., LLC*,
  582 F.3d 1314 (Fed. Cir. 2009).........................................................................9, 10

*Baker v. Booz Allen Hamilton, Inc.*,
  358 F. App'x 476 (4th Cir. 2009) .........................................................................15

*Barnes Grp., Inc. v. C & C Prods., Inc.*,
  716 F.2d 1023 (4th Cir. 1983) ..............................................................................13

*In re BNX Sys. Corp.*,
  310 F. App'x 574 (4th Cir. 2009) ...........................................................................7

*Brewer v. Nat'l Indem. Co.*,
  363 F.3d 333 (4th Cir. 2004) ................................................................................13

*Carlisle Ventures, Inc. v. Banco Espanol de Credito, S.A.*,
  176 F.3d 601 (2d Cir. 1999)..................................................................................17

*Castellanos v. Pfizer, Inc.*,
  No. 07-60646, 2008 WL 2323876 (S.D. Fla. May 29, 2008)................................16

*Eagle Paper Int'l, Inc. v. Expolink, Ltd.*,
  CIV. A. 2:07CV160, 2008 WL 170506 (E.D. Va. Jan. 17, 2008)..........................15

*Farnham v. Windle*,
  918 F.2d 47 (7th Cir. 1990) ..................................................................................18

*Ferrostaal, Inc. v. M/V Sea Phoenix*,
  447 F.3d 212 (3d Cir. 2006)..................................................................................15

*Frazier v. Map Oil Tools, Inc.*,
  Civ. A. No. C-10-4, 2010 WL 2352056 (S.D. Tex. June 10, 2010) .......................18

*Indura S.A. v. Engineered Controls Int'l Inc.*,
  No. 1:10CV457, 2011 WL 3862083 (M.D.N.C. Sept. 1, 2011)..............................15

*Intellectual Prop. Dev., Inc. v. TCI Cablevision of Cal., Inc.*,
    248 F.3d 1333 (Fed. Cir. 2001)............................................................................12

*Mentor H/S, Inc. v. Med. Device Alliance, Inc.*,
    240 F.3d 1016 (Fed. Cir. 2001)..............................................................................7

*Morrow v. Microsoft Corp.*,
    499 F.3d 1337 (Fed. Cir. 2007)..............................................................................1

*Pfizer Inc. v. Elan Pharm. Research Corp.*,
    812 F. Supp. 1352 (D. Del. 1993)..............................................................2, 8, 9, 17

*Power Lift, Inc. v. Weatherford Nipple-Up Sys., Inc.*,
    871 F.2d 1082 (Fed. Cir. 1989)............................................................................18

*Prima Tek II, L.L.C. v. A-Roo Co.*,
    222 F.3d 1372 (Fed. Cir. 2000)...........................................................................8, 9

*Speedplay, Inc. v. Bebop, Inc.*,
    211 F.3d 1245 (Fed. Cir. 2000)..............................................................................8

*Spine Solutions, Inc. v. Medtronic Sofamor Danek USA, Inc.*,
    620 F.3d 1305 (Fed. Cir. 2010)..............................................................................5

*Textile Prods., Inc. v. Mead Corp.*,
    134 F.3d 1481 (Fed. Cir. 1998)..............................................................................7

*Vaupel Textilmaschinen KG v. Meccanica Euro Italia S.P.A.*,
    944 F.2d 870 (Fed. Cir. 1991)...........................................................................9, 12

*VirnetX, Inc. v. Microsoft Corp.*,
    No. 6:07CV80, 2008 WL 8894682 (E.D. Tex. June 4, 2008) ...............................12

### FOREIGN STATUTES

Korean Patent Act, Act No. 950, Dec. 31, 1961 ........................................................4

### RULES

Fed. R. Civ. P. 44.1 .................................................................................3, 14, 15, 16

### OTHER AUTHORITIES

11 Williston on Contracts § 33:1 (4th ed.)..................................................................6

Restatement (Second) of Conflict of Laws § 188 ......................................................14

## I.     INTRODUCTION AND SUMMARY

Almost five months ago Porto Technology, Co., Ltd. and Porto Technology, LLC (collectively "Porto" or "Plaintiffs") filed a complaint in this court alleging that they were the "exclusive licensee[s]" of two patents owned by Korean citizens.  They further asserted that they possessed "the exclusive right to bring actions for infringement thereof, and recover damages therefrom, including for past infringements."  Compl. ¶ 10.  One would presume that the attorneys who vouched these facts had a basis for them and had examined the premises of any relevant license agreements in light of clear Federal Circuit precedent on the standing of licensees.  It turns out in fact that *none of the averments of paragraph 10 of the Complaint is true.*  It also turns out that the first time Porto had the License Agreement translated into English was *after* it unsuccessfully moved to strike the issue of standing from Verizon's answer.

There are two clear grounds for dismissal that do not require this Court to even address Porto's last-ditch reliance on Korean law.  The first is Article III standing which, of course, the Court must address prior to any other issue in the case.  In its Opposition ("Opp."), Porto does not even attempt to demonstrate that it has an "exclusive license" under United States law that would give it Article III standing.  Porto's license simply cannot be "exclusive" because the Patent Owners have retained the right under Article 3.4 of that license to force Porto to grant a non-exclusive license "to any third parties" chosen by the Patent Owners.[1]  A patent owner's "right to license third parties" is key to "constitutional standing analysis" and where an "agreement [does] not clearly manifest that the owner would refrain from granting a license to anyone else in the particular area of exclusivity," there is no standing.  *Morrow v. Microsoft Corp.,* 499 F.3d 1337, 1342 (Fed. Cir. 2007) (citing *Textile Prods., Inc. v. Mead Corp.*, 134 F.3d

---

[1] Both Porto's translation of the License and Verizon's translation use the phrase "any third party."

1481, 1485 (Fed. Cir. 1998)).  Porto's only response to this argument is to attempt to convince the Court that the license agreement does not mean what it says.  Porto takes the extraordinary step of offering a declaration from a principal of Porto, *see* Opp. Ex. B ("Chung Dec."), as to *what the Lees (the Patent Owners) intended when they executed the license.*  The Court should decline this extraordinary venture into double hearsay regarding the supposed mental state of a party not before the Court.  Indeed, the Chung Declaration stands as an example of why Porto should not be allowed to litigate these patents without the Patent Owners present to defend their own interests.  Thus, this Court can and should dismiss this case for lack of Article III standing without any need to reference foreign law.

A second ground for dismissal, also independent of any need to examine Korean law, is the severe restriction on transfer or assignment contained in Article 1.2 of the License Agreement.  Porto is not allowed to assign the License to anyone—even an affiliate—without the consent of the Patent Owners.  That consent is not conditioned in any way—the Patent Owners can deny their consent for any reason or no reason.  Again, clear Federal Circuit precedent indicates that such a limitation on alienation is inconsistent with an exclusive license being a *de facto* transfer of title.  Porto does not even cite *Sicom Systems, Ltd. v. Agilent Technologies, Inc.*, in its Opposition, though that case confirms that a restriction on the ability to assign is "a fatal reservation of rights."  427 F.3d 917, 979 (Fed. Cir. 2005) (quotation omitted); *see also Pfizer Inc. v. Elan Pharm. Research Corp.*, 812 F. Supp. 1352, 1373 (D. Del. 1993) (noting that without a right to assign, a court "need look no further in determining that [the licensor] reserved substantial rights under the Agreement").  Thus, statutory standing is absent for the many reasons identified below, because even were this License truly "exclusive" (which it clearly is not) it does not convey "substantial rights" to Porto within the meaning of Federal Circuit precedent.

Porto has also failed to demonstrate that it possesses any right to sue for past damages. As Verizon demonstrated in its opening motion, the right to sue for past damages is a privilege separate and apart from the general right to license and enforce a patent. Nothing in the License itself (under either party's translation) or in the so-called legal opinion on Korean law, *see* Opp. Ex. A ("Dongin Letter"), expressly states that the right to sue for past damages has been transferred to Porto. Nor does Porto address or attempt to refute Verizon's position on past damages in its Opposition. Whether by failure of proof or waiver, if the Court does not dismiss outright, it should enter an order limiting Porto's prayer for damages to those incurred after the date of the License itself, which is June 13, 2011.

Porto's argument that Korean law should apply to the interpretation and legal effect of a License to grant sublicenses to two U.S. Patents "in the area where the rights are effective," *viz.* the United States, is wrong. Porto's reliance on Article 6.2 of the License to point to Korean law is frankly disingenuous. Article 6.2 is obviously a venue provision only and it places venue in Seoul, Korea only as to disputes between the Patent Owners and Porto. *See* Article 6.1. That provision has nothing to say about the law applicable to a dispute over patent standing when Porto has brought suit against a United States corporation, with a United States affiliate as a party plaintiff, in a federal court. Porto effectively concedes that under U.S. law it does not even have the right to practice the patents and nowhere does Porto contend that it has "substantial rights" to the patents as defined by Federal Circuit precedent.

Even if Korean law did apply,[2] the case should be dismissed. The truly slap-dash "legal opinion" submitted by Porto seeks to maintain the improbable position that, under Korean law,

---

[2] In the unlikely event that this Court finds that it must make a determination of Korean law under Fed. R. Civ. P. 44.1, Verizon respectfully requests the opportunity to put in its own evidence in that regard. Porto evidently sought and received the Dongin Letter in December of 2012, but the first notice Verizon has had of the issue is in Porto's opposition filed on February 11, 2013.

rights that are *not specified* in an "exclusive license" are in fact transferred to the licensee.  No Korean case law is cited or analyzed and, on its face, the "opinion" conveniently omits several sections of the Korean patent law that are inconsistent with an "exclusive licensee" having substantial rights under U.S. law.  For example, the Korean Patent Act contains provisions that require the very sort of owner consent for sublicensing and assignments that is fatal under settled U.S. law.  *See, e.g.*, Patent Act, Act No. 950, Dec. 31, 1961, arts. 100(3)-(4) (S. Kor.) (hereinafter "Korean Patent Act").  The "legal opinion" also ignores the fact that Article 100(5) states that Article 99(2) through 99(4) "shall apply *mutatis mutandis* to exclusive licenses." Article 99 deals with joint ownership and guarantees both parties the right to practice the patent and requires joint consent for numerous acts affecting the patent, *see* Exhibit 4.  These provisions—mysteriously absent from the Dongin Letter—preclude the use of Korean law to demonstrate that Porto possess "substantial rights" and therefore statutory standing under U.S. law.  They should also fatally undermine the Court's confidence in the Dongin Letter itself.

In sum, there is no Article III standing, no statutory standing, and no right to sue for past damages, and the Court need not look to Korean law to so hold.  Moreover, a fair application of international conflict of law principles points to U.S. law as the correct law of choice here.  In any event, provisions of the Korean Patent Act itself fatally undermine the opinion proffered by Porto.  For these reasons, the Court should dismiss this lawsuit.

## II.     KOREAN LAW IS IRRELEVANT TO THE TWO INDEPENDENT GROUNDS FOR LACK OF STANDING.

Porto's attempt to inject Korean law into this dispute should be rejected.  Even accepting all of Porto's claims about its rights under Korean law, Porto fails to demonstrate that it has an "exclusive license" within the meaning of U.S. law or that "substantial rights" were conveyed by

that license.  With both Article III and statutory standing absent, the Court can and should dismiss without any formal findings as to Korean law.

A.      **Porto Has No Constitutional Standing Because It Is Not An "Exclusive Licensee."**

"It is well-settled that only a patent owner or an exclusive licensee can have constitutional standing to bring an infringement suit . . . ."  *Spine Solutions, Inc. v. Medtronic Sofamor Danek USA, Inc.*, 620 F.3d 1305, 1317 (Fed. Cir. 2010) (quotation marks omitted). Since Porto is not the patent owner, it must be an "exclusive licensee" to have constitutional standing.  "To be an exclusive licensee for standing purposes, a party must have received, not only the right to practice the invention within a given territory, but also the patentee's express or implied promise that others shall be excluded from practicing the invention within that territory as well."  *Id.* (quotation marks omitted).   In its opening brief, Verizon explained that Porto cannot be an exclusive licensee for at least three reasons: (1) Porto does not have the right to *practice* the invention, but only the ability to license and enforce the patents; (2) Porto lacks exclusivity because it has no categorical right to *exclude* any third party, because the Patent Owners have an unfettered ability to license any third parties free of charge; and (3) Porto has no right to *prevent* violations through enforcement lawsuits, but only the power to *license*.

Porto does not grapple with—or even cite—the relevant case law dealing with constitutional standing.  *See* Opp. at 6-7.  Instead, Porto argues only that Article 3.4 does not mean what it says and that the right of the Patent Owners to compel the licensing of third parties "was intended by the parties to be limited to a non-exclusive license to a yet-to-be-formed company owned by the Patent Owners in the event the Patent Owners decided to commercialize the inventions."  Opp. at 7.

The plain language of Article 3.4 of the License as rendered in both parties' translations

should put an end to this issue and to this case.  Article 3.4 grants the Patent Owners the right to compel Porto to grant royalty-free licenses to practice the two patents to the Patent Owners themselves "*or any third parties 'Licensor' appoints free of charge upon 'Licensor's' request*." The words "or" and "any" which appear in both parties' translations preclude a reading of Article 3.4 to allow the Patent Owners to grant rights only to some limited universe of entities affiliated with the Patent Owners themselves.  Indeed, the License uses the phrase "affiliated firms" or "affiliated companies" elsewhere, such as in the assignment restrictions on Porto in Article 1.2.  If the Patent Owners' subleasing power in Article 3.4 were to be limited to entities affiliated with the Patent Owners, one would expect some adjective other than "any" to define "third parties."

Porto's attempt to override the plain language of Article 3.4 with a self-serving hearsay declaration from one of its principals must be rejected.  At a minimum, the Chung Declaration runs afoul of the parol evidence rule, which "prohibits the admission of evidence of prior or contemporaneous oral agreements … whose effect is to add to, vary, modify, or contradict the terms of a writing which the parties intend to be a final, complete, and exclusive statement of their agreement."  11 Williston on Contracts § 33:1 (4th ed.).  Parol evidence "may not be used to vary, supplement, or contradict language appearing in the contract." *Id.*  Here, the Chung Declaration purports to state what the intent of the parties was in negotiating the license and then uses that intent to garner a favorable interpretation. *See, e.g.*, Pl.'s Ex. B, at ¶ 2 ("The Parties intended for the exclusive license to exclusively grant to Porto all rights in the Asserted Patents except those rights explicitly reserved"); *id.* at ¶ 4 ("It was never contemplated by the Parties that Article 3.4 would be used by the Lees to circumvent the exclusive patent grant"). These references to intent fail the parol evidence rule because Porto attempts to create ambiguity where

- 6 -

there is none, and then fills in the newly created gap with what it views as more agreeable content.  In fact, the Chung Declaration does not even qualify as valid parol evidence, because it is not contemporaneous with the making of the contract.  It is the self-serving declaration of a party to the contract about what the *other party* believed the contract to mean.  Because the language of Article 3.4 is clear, delving into the parties' intent in forming the license is unnecessary; and plaintiff's attempt to change the terms of the license by doing so fails because the parol evidence rule "cannot be used to first create an ambiguity and then remove it."  *In re BNX Sys. Corp.*, 310 F. App'x 574, 577 (4th Cir. 2009) (quoting *Cohan v. Thurston*, 223 Va. 523, 525 (1982)).

Without the Chung Declaration, Porto has no defense against dismissal.  They have not and cannot contest that, as a matter of U.S. law, Article 3.4 means what it says then this license is non-exclusive as a matter of law.  *See, e.g., Textile Prods.*, 134 F.3d at 1484 ("To qualify as an exclusive license, an agreement must clearly manifest the patentee's promise to refrain from granting to anyone else a license in the area of exclusivity.").

### B.  Porto Has Failed To Show It Has "All Substantial Rights."

Porto has not met its burden to demonstrate that it has an exclusive license granting it "all substantial rights" in order to have standing to sue by itself, which it must do with "written instrument[s]" documenting the transfer of adequate rights.  *Mentor H/S, Inc. v. Med. Device Alliance, Inc.*, 240 F.3d 1016, 1017 (Fed. Cir. 2001).  Porto's incomplete, inaccurate, and self-serving submissions cannot satisfy that burden.

1.  The Patent Owners, Through Articles 3.4 And 1.2, Control Assignments And Sublicensing, So Porto Cannot Satisfy U.S. Standing Law.

The rights to sublicense and assign are key to determining whether a Licensee has rights that entitle it to bring suit by itself.  As explained, *see* Motion at 13-16 (citing cases), License

reservations preclude this Court from finding that Porto has the requisite standing to sue alone. Nothing about Porto's submissions alters this conclusion.

Article 3.4's reservation to the Patent Owners of authority to command the issuance of licenses to itself or any third parties without limitation blows a gaping hole in Porto's authority. That hole destroys the license's exclusivity, as explained above, but it also makes it impossible to conclude that Porto has all substantial rights. This reservation of rights is broader than those that courts have readily found defeat a claim to all substantial rights. There is no limitation to the universe of possible compelled sublicensees, *see Prima Tek II, L.L.C. v. A-Roo Co.*, 222 F.3d 1372, 1380 (Fed. Cir. 2000) (agreement requiring licensee to sublicense to specified sublicensee did not convey all substantial rights), and there is no good faith or commercial reasonableness limitation on the right to compel. *Cf. Speedplay, Inc. v. Bebop, Inc.*, 211 F.3d 1245, 1251-52 (Fed. Cir. 2000) (approving consent requirement that required that consent not be unreasonably withheld).

Were the limitations of Article 3.4 not enough to end this case, Article 1.2 provides two independent bases for dismissal. First, Article 1.2 states that Porto shall not assign the exclusive license granted in the License to anyone without the Patent Owners' "consent." Black letter law indicates that this restriction is fatal to a claim of all substantial rights. *See Sicom*, 427 F.3d at 980. It goes beyond other reservations found infirm, because it extends even to Porto's affiliates. *See Abbott Labs. v. Diamedix Corp.*, 47 F.3d 1128, 1132 (Fed. Cir. 1995). Porto responds that some of the cases condemning such a reservation also evaluated other factors. Opp. at 9 (attempting to distinguish *Abbott Labs* and *Pfizer*). But those cases included additional factors (many present here) that confirmed the absence of all substantial rights, such as a "limited right to make, sell, and use" and some continued or conditional right to sue for infringement. *Abbott*

- 8 -

*Labs.*, 47 F.3d at 1132; *see also Pfizer*, 812 F. Supp. at 1374 (noting retention of among others, the right "to obtain a non-exclusive, royalty-free sublicense for itself or its affiliate").

Porto completely ignores case law that strongly suggests a blanket reservation on assignment like this one is enough to deny standing, or at least to require the patent owner to join the lawsuit. "[T]he right to prevent [a licensee] from assigning its rights under the license to any party other than a successor in business" is a retained right "commonly held sufficient to make a patent owner who grants an exclusive license a necessary party to an infringement action brought by the licensee." *Abbott Labs*, 47 F.3d at 1132. Notably, Porto does not even mention *Sicom*, which confirms that, among other things, a restriction on the ability to assign is "a fatal reservation of rights." 427 F.3d at 974 (quotation omitted). As *Pfizer* noted, without a right to assign, a court "need look no further in determining that [the licensor] reserved substantial rights under the Agreement." 812 F. Supp. at 1373; *cf. Vaupel Textilmaschinen KG v. Meccanica Euro Italia S.P.A.*, 944 F.2d 870, 875-76 (Fed. Cir. 1991) (finding agreement constituted an assignment of all substantial rights, but recognizing that a restriction on a transferee's right to assign is a substantial right reserved by the transferor).

Article 1.2's second infirmity is in its apparent restriction on Porto's right to sublicense. *See* Motion at 15-16. As the *Sicom* court noted, this obligation is problematic. 427 F.3d at 979; *see also Prima Tek II*, 222 F.3d at 1380 ("A licensee's right to sub-license is an important consideration in evaluating whether a license agreement transfers all substantial rights."). In response, Porto baldly asserts that it "does not restrict Porto's right to grant non-exclusive licenses … nor does Article 1.2 require the Patent Owner's consent to grant a non-exclusive license." Opp. at 10. But despite having the burden, Porto offers no basis for the Court to read Article 1.2 in this way. Porto nowhere addresses the main case cited by Verizon, *AsymmetRx,*

*Inc. v. Biocare Med., LLC*, 582 F.3d 1314 (Fed. Cir. 2009).  *AsymmetRx* found that a licensing restriction far less intrusive than Porto's nonetheless deprived the Licensee of "all substantial rights."  *Id.* at 1322.  That restriction compelled the grant of sublicenses to those suggested by the licensor, but only if in the licensee's view the sublicenses "were not contrary to sound and reasonable business practices" and increased the availability of the licensed products.  *Id.* at 1320.  Verizon argued that this case "requires dismissal here," but Porto makes no response.  Porto fails to refute the obvious meaning and operation of Article 1.2, and as such has not shown that it has standing.

               2.     <u>Porto Failed To Refute Verizon's Showing That The Patent Owners<br>Retain The Ability To Control Litigation.</u>

As explained, "the nature and scope of the licensor's retained right to sue accused infringers is the most important factor in determining whether an exclusive license transfers sufficient rights to render the licensee the owner of the patent."  *Alfred E. Mann Found. for Sci. Research v. Cochlear Corp.*, 604 F.3d 1354, 1361 (Fed. Cir. 2010).  The Patent Owners retain the right to sue, both by virtue of the License's silence and its reservation of authority in the Patent Owner to grant further licenses.  Motion at 12-13.  Porto's submissions do not change this.

Porto offers a two-step response.  First, it claims to have the right to sue despite the License's silence.  It cites what it characterizes as operation of the Korean Patent Act and the "unlimited" nature of the rights conveyed by an "Exclusive License" thereunder, which brings with it the right to sue.  Even if the Korean Patent Act applies and is properly so interpreted—a proposition that is specious, not proven by Porto, and that this Court need not resolve—the right to sue is necessary but not sufficient: it must be *exclusive*.  Thus, Porto's second claim is that the right to sue is exclusive because "the owner of patent holder must obtain consent to practice the

patent" which right to practice—Porto conclusorily asserts—includes the right to seek compensation and injunctive relief, and is, by operation of Korean Law, "exclusive."  Opp. at 8. Porto's only support is the inaccurate and incomplete Dongin Letter and its circular claims about the "exclusive" effect of an "Exclusive License" in Korea.

The Dongin Letter actually supports the inference that any right to sue is *not* exclusive.  It states that the "Exclusive Licensee has an independent right to file a lawsuit in his or her own name."  Dongin Letter at 2.  It does not use "sole" or "only" or "exclusive."  Its use of "independent" implies that the Patent Owners retain the right to sue.  This is consistent with the immediately preceding statement that "[t]he rights of the Exclusive Licensee are not intended to substitute the rights of the owner of the patent right."  *Id.*

The Korean Patent Act casts further doubt on Porto's litigation exclusivity argument. Articles 126(1) and 126(2) authorize the "patentee or exclusive licensee" to seek certain remedies.  Article 128, addressing loss and compensation, refers to action by the "patentee or exclusive licensee."  Articles 131 and 225 speak in terms of injury to a "patentee or exclusive licensee."  These references to the "patentee" are nowhere addressed in the Dongin Letter, but support the conclusion that both parties retain the right to sue.  The Dongin Letter and the Korean Patent Act confirm that Porto does not have the exclusive right to sue, or that it is at least unclear, which defeats Porto's standing.

3.     Other Restrictions Confirm That Porto Lacks All Substantial Rights.

Verizon identified additional obligations in Article 2 that confirm Porto lacks all substantial rights.  Motion at 16-17.  Porto claims that these License obligations are not problematic because they are "more appropriately categorized as business or economic terms." Opp. at 10.  Beyond that conclusory assertion, Porto's attempts to avoid relevant case law fail.

Porto tries to distinguish one case cited by Verizon and wholly ignores another.[3]   Porto's generic use of *Vaupel* to claim that Porto can still have all substantial rights while ceding certain payment and information obligations misses the mark.   *Vaupel* turned on the presence of rights Porto has not proven here, and subsequent courts agree that licenses must be viewed in their totality and that restrictions like the right to permit infringement, various consultation obligations, and restrictions on transfer and assignment, deprive a licensee of all substantial rights.   *See, e.g.*, *Intellectual Prop. Dev., Inc. v. TCI Cablevision of Cal., Inc.*, 248 F.3d 1333 (Fed. Cir. 2001).   Given the other authorities retained by the Patent Owners, the additional obligations in Article 2 reinforce Porto's lack of substantial rights.

## III.   PORTO'S EFFORT TO AVOID FEDERAL STANDING REQUIREMENTS BY INVOKING KOREAN PATENT LAW FAILS.

Porto all but concedes that the explicit terms of the License do not give Porto the critical rights needed to show standing, including the right to use the patents, the right to prevent violations of the patents, and the right to exclude others from using the patents. *See* Mot. at 5-10. Porto does not seriously contest Verizon's reading of the U.S. caselaw. Opp. at 4-5. Instead, Porto claims that it has standing because Korean law implicitly grants Porto sweeping and "exclusive" rights, even though they are nowhere enumerated in the License and the plain terms of the cited foreign statute belie Porto's interpretation.

Porto's argument rests entirely on a three-page letter from a partner at a Korean law firm. The presentation is grossly inadequate, as it provides no Korean case law and a very selective

---

[3] Porto tries to distinguish *VirnetX, Inc. v. Microsoft Corp.*, No. 6:07CV80, 2008 WL 8894682 (E.D. Tex. June 4, 2008) (finding substantial rights were retained by the patent owner through a combination of payment obligations and control over decisions affecting the patent) by arguing that Verizon has not claimed that the Patent Owners can exercise any "decisional control" related to the Patents.   This is wrong.   One of Verizon's core arguments in the opening brief  is that the Patent Owners retain near-complete control through the unilateral and unfettered right to command licenses be made to third parties.   Porto does not even mention *Advanced Technology Incubator* or *Propat*, cited by Verizon, *see* Motion at 16-17.

- 12 -

and incomplete presentation of the Korean Patent Act. Porto bears the burden to demonstrate its standing under both Article III and the Patent Act. Porto's attempt to inject Korean law into this proceeding does not satisfy that burden—in fact it raises additional questions about Porto's standing and its relationship with the Patent Owners. Verizon respectfully submits that Korean law should not apply and that even if it does, a cursory examination of the Korean Patent Act refutes the central premise of the Dongin Letter.

### A.     Porto Has Failed To Demonstrate That Korean Law Applies.

Porto argues that Korean law applies because the License "explicitly states that disputes will be resolved in the domicile of the Licensor." Opp. at 2. As noted above, this is disingenuous. Article 6.2 is a forum selection clause that by its terms[4] applies only to *disputes between the parties to the License*. It says that if Porto sues the Patent Owners, that suit should be heard where the Patent Owners reside, e.g., Seoul, Korea. It says nothing about venue, let alone choice of law, in a suit in the Eastern District of Virginia against a United States corporation, based on two United States patents, and alleging infringement under Title 35 of the United States Code.

Nor does Porto's reliance on the Restatement of Conflicts justify resort to Korean law. *See* Opp. at 2-3. First, Porto ignores the fact that "Section 188 also incorporates the general principles of § 6, which are to be used to guide the process of assessing parties' contacts and states' interests in transactions to reach a choice of law." *Barnes Grp., Inc. v. C & C Prods., Inc.*, 716 F.2d 1023, 1038-39 (4th Cir. 1983) (citing Restatement (Second) of Conflict of Laws § 188(2)); *accord Brewer v. Nat'l Indem. Co.*, 363 F.3d 333, 338 (4th Cir. 2004). Porto makes no argument under the principles in § 6, which include the "needs of the interstate [and

---

[4]*See* License Article 6.1 and 6.2.

international] system[s]," the relevant policies of the forum and other interested parties, "the protection of justified expectations," "the basic policies underlying [the particular field of law]," "certainty, predictability, and uniformity of result," and "ease in the determination and application of the law to be applied." Restatement (Second) of Conflict of Laws § 188(2). These factors favor the application of domestic forum law. Here, a U.S. patent is being sued upon, pursuant to a License that deals only with that U.S. patent, in a U.S. court by a U.S. entity against a U.S. company for allegedly infringing activity occurring in the United States. Alleged infringers have justified expectations in facing claims of infringement from only those authorized to bring suit, as determined under the U.S. Constitution. Interpreting the License under domestic law would promote the interest of the U.S. patent system and predictability because owners of U.S. patents and others can more easily ascertain potential outcomes by relying on federal courts' experience. Finally, and perhaps most importantly, this court can more easily determine and apply Virginia law than Korean law.

Second, contrary to Porto's claim, the Section 188(2) factors favor application of Virginia law. Porto admits that the License was consummated so that it could "monetize the [U.S.] patents, through litigation or licensing." *See* Opp. at 2. The "place of performance" is here, in the Eastern District of Virginia via this litigation; U.S. patent infringement claims are properly brought in the United States. *See* Restatement (Second) of Conflict of Laws § 188(2)(c). The subject matter is a United States patent, whose value is realized in the United States. *See id*. § 188(2)(d). Notwithstanding Porto's protestations that the contract was negotiated and signed in Korea, its purpose was to license property rights defined and protected by the Constitution and the laws of the United States government. The laws of the United States should apply.

**B.    The Court Cannot Apply Korean Law Because Porto Has Failed To Comply With The Requirements Of Federal Rule of Civil Procedure 44.1.**

Federal Rule of Civil Procedure 44.1 governs the application of foreign law in federal courts. It requires that "[a] party who intends to raise an issue about a foreign country's law must give notice by a pleading or other writing. In determining foreign law, the court may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence. The court's determination must be treated as a ruling on a question of law."  Fed. R. Civ. P. 44.1.

This rule imposes a dual burden on parties claiming foreign law applies.  *Baker v. Booz Allen Hamilton, Inc.*, 358 F. App'x 476, 481 (4th Cir. 2009).  First, a plaintiff must raise the applicability of foreign law by providing appropriate notice. *Id.* Second, a plaintiff has the burden of proving *what the foreign law is* to enable the district court to apply it in the particular case.  *Id.*  If the party fails in either respect, "the district court should apply the forum state's law." *Id.*; *see also Ferrostaal, Inc. v. M/V Sea Phoenix*, 447 F.3d 212, 216 (3d Cir. 2006) ("The parties . . . carry the burden of proving foreign law; where they do not do so, we will ordinarily apply the forum's law." (quotation marks omitted)); *Indura S.A. v. Engineered Controls Int'l Inc.*, No. 1:10CV457, 2011 WL 3862083, at *25-27 (M.D.N.C. Sept. 1, 2011) ("Because Plaintiff Indura failed to satisfy its burden of proving what, if anything, foreign law says about breach of warranty claims such that the Court could apply said law in this case, the Court should apply the forum state's law." (citation, alterations, and quotation marks omitted)).  Porto has failed on both counts and should be precluded from offering any evidence of foreign law.

1.    Porto Has Failed To Comply With The Notice Requirements Of Federal Rule Of Civil Procedure 44.1.

Federal Rule of Civil Procedure 44.1 requires a party to give notice that foreign law may apply at a time "sufficient to give the court *and the defendants* adequate notice of the need to

- 15 -

research the foreign rules." *Eagle Paper Int'l, Inc. v. Expolink, Ltd.*, CIV. A. 2:07CV160, 2008 WL 170506, at *6 (E.D. Va. Jan. 17, 2008) (emphasis added) (quoting *Hodson v. A.H. Robins Co.*, 528 F. Supp. 809, 824 (E.D. Va. 1981)). Porto's February 12, 2013 opposition to Verizon's Motion to Dismiss provided the first notice that it would argue Korean law applies to the license.[5]

Porto has had the burden to prove its standing since the inception of this lawsuit. It was on specific notice of Verizon's concerns about standing when Verizon filed its Answer and Affirmative Defense on standing. Porto was on notice that standing would be an issue (and therefore Korean law might be an issue) at least since Verizon filed its answer on November 5, 2012. In addition, Porto had the Korean license translated into English on December 24, 2012. It clearly knew by that date that Korean law could become an issue (at least in its view) yet no Rule 44.1 notice was forthcoming until Porto filed its opposition on February 12, 2013.

2.    Porto Has Failed To Demonstrate That Korean Law Provides Porto With The Contractual Rights It Claims.

But even if Korean law did apply, Porto has failed to carry its burden of proving what Korean law is and that it supports Article III and statutory standing in this case.    Porto cites no Korean cases or Korean treatises of any kind. The sum total of its presentation is the Dongin Letter, a two-page memorandum letter from Porto's counsel in Korea discussing abstract and unresponsive questions of Korean patent law. This is woefully insufficient. The memorandum is (1) silent as to Mr. Kwon's qualifications; (2) inconclusive and illogical, as there is no reasoning

---

[5] Given the short time to file this Reply, the obvious irrelevance of different views of Korean law, and the separate but equally dispositive deficiencies in Porto's submissions, Verizon believes that it is not in the Court's or the parties' interest at this time to litigate competing expert opinions on the meaning of Korean patent law. As noted above, should the Court determine that Korean law is applicable and relevant, Verizon respectfully reserves the right to secure and present to the court its own expert analysis of Korean patent law. *See Castellanos v. Pfizer, Inc.*, No. 07-60646, 2008 WL 2323876, at *3 (S.D. Fla. May 29, 2008) (allowing parties to supplement their briefing on Ecuadorian law).

behind the opinions or Korean case law cited, (3) incomplete, as it fails to address several clearly relevant provisions of the Korean Patent Act provided by Porto (which is only a partial presentation of the Act), and (4) self-serving, as it appears that it might have been drafted by an attorney who has represented Porto in this action.[6]  *See Carlisle Ventures, Inc. v. Banco Espanol de Credito, S.A.*, 176 F.3d 601, 604 (2d Cir. 1999) (finding a lawyer's failure to support his conclusion with any relevant legal authorities to be insufficient to establish the content of the foreign jurisdiction's law).  These defects alone justify the Court declining to rely on the Dongin Letter as a qualified opinion on Korean law.

Even with these problems, the substance of the Dongin Letter is even worse.  It discusses the rights of exclusive licensees of *Korean* patents under the Korean Patent Act.  Porto presents no reasoning or law indicating that the Korean Patent Act—which appears to apply only to *Korean* patents—governs a contract involving *United States* patents.  Nor is there any logical reason for concluding that this is the case.[7]

At bottom, there is no reason to accept Porto's representations about the applicability or meaning of Korean law.  The Court therefore should not apply Korean law.  *See Pfizer*, 812 F. Supp. at 1360 (refusing to apply German law where affidavit of a German attorney "lacks any

---

[6] Verizon notes that Porto's translated privilege logs appear to contain the name Dan Kwon associated with documents other than the Dongin Letter.  If they are the same person, and his involvement extends beyond this opinion, Mr. Kwon should have disclosed that to the Court in his "opinion."  Also, issues could be raised regarding an attorney becoming a witness in his or her own case.  Verizon believes that Porto should inform the Court and Verizon as to whether the Dan Kwon offering his opinion in the Dongin Letter has any other connection with Porto.

[7] Porto appears to concede that American law must be applied to make the ultimate determination whether a license conveys all substantial rights. *See* Opp. at 4 (arguing that "[i]n determining whether a license agreement conveys all substantial rights, a court must also assess the intention of the parties" (citing *Prima Tek II*, 222 F.3d 1372 (citing *Vaupel*, 944 F.2d at 875)).

probative exposition of German principles of contract interpretation, and references no authority on German law principles").[8]

### C.   Under Traditional Contract Law, There Is No Dispute That Porto Lacks Standing.

All of Porto's arguments regarding standing turn on alleged rights created under Korean law. If the Court does not accept Porto's claims under Korean law, Porto's standing completely evaporates because none of these arguments prevail under traditional contract law.

Porto's license agreement is a contract governed by ordinary principles of contract law. *See Power Lift, Inc. v. Weatherford Nipple-Up Sys., Inc.*, 871 F.2d 1082, 1085 (Fed. Cir. 1989). Under traditional contract law, there is no dispute that the License grants Porto none of the implicit rights it claims, as rights not explicitly given to the licensee remain with the patent holder.  *See, e.g., In re Access Beyond Techs, Inc.*, 237 B.R. 32, 46 (Bankr. Del., 1999) ("Where the provisions of a patent license are silent on the question of assignability, the license is nontransferable."); *Frazier v. Map Oil Tools, Inc.*, Civ. A. No. C-10-4, 2010 WL 2352056, at *4 (S.D. Tex. June 10, 2010) ("The License Agreement's failure to provide [the licensee] with any right to sue for infringement, or to recover any damages, necessarily leads to the conclusion that [the licensee] has only a non-exclusive license, and thus no standing to sue.").  Indeed, by failing to make any argument under traditional contract law, even in the alternative, Porto has waived any such claim.  *See Farnham v. Windle*, 918 F.2d 47, 51 (7th Cir. 1990) ("[Plaintiff] did not … brief these additional theories to the district court in his memorandum in opposition to [Defendant's] motion to dismiss, and his failure to do so results in waiver.").

Finally, even if its view of Korean law obtains and even if its license could get it over the

---

[8] As noted, to the extent the Court thinks Korean law does apply, Verizon reserves the right to brief the issue.

obstacles of Article III and prudential standing, Porto does not address the bar under black letter law to any suit for damages *prior to the date of its License, June 13, 2011*.  At a minimum, as Verizon explained, Motion at 17-18, this suit must be dramatically limited to damages occurring after June 13, 2011.

The right to seek damages for past infringement must be clearly granted and the plaintiff bears the burden to show it.  *Id*.  Porto works mightily to claim a right to sue, relying on tenuous claims that under the Korean Patent Act an "exclusive license" includes the right to sue.  Porto makes no argument that the right to sue for infringement it claims is implicitly granted extends to the right to seek *past damages*.  The suit must be limited at least to this extent.

## IV.  THE PATENT OWNERS ARE INDISPENSIBLE PARTIES UNDER FEDERAL RULE OF CIVIL PROCEDURE 19.

Porto claims that the Patent Owners are not necessary parties.  Opp. at 11-12 (citing no case law).  But the Patent Owners meet the requisites of Rule 19(a) because the court cannot be sure that in their absence it can accord "complete relief" between Verizon and Porto.  Article 3.4 alone demonstrates that, as the Patent Owners could in effect insulate Verizon from suit by Porto.  Theoretically, the Patent Owners could use Article 3.4 to negotiate their own deal with Verizon.  In addition, the Chung Declaration makes clear that Porto is adverse to the Patent Owners as to the scope of the License and the rights retained by the Patent Owners.  Indeed, before this Court were to narrow Article 3.4 based on one party to the License's self-serving declaration about what was "intended," it would have to give the Patent Owners an opportunity to be heard.  If anything, Porto's Opposition, the Dongin Letter, and Chung Declaration make the presence of the Patent Owners in this lawsuit all the more imperative.

## V.    <u>CONCLUSION</u>

Porto does not have either Article III or statutory standing to sue under the Patent Act and this case should be dismissed for lack of standing.  In the alternative, Porto should be ordered to join the Patent Owners within a time certain or face dismissal with prejudice.  If for any reason the Court does not dismiss this action, it should enter an order limiting any damages Porto may claim from the period its rights began under the Korean license, which is June 13, 2011.


Date: February 15, 2013                    Respectfully Submitted,

                                            _/s/ Brian Riopelle_____
                                            BRIAN C. RIOPELLE
                                            briopelle@mcguirewoods.com
                                            MCGUIREWOODS LLP
                                            901 E Cary St
                                            Richmond, VA 23219-4030
                                            Tel: 804.775.1084
                                            Fax: 804.698.2150

                                            ANDREW G. MCBRIDE (admitted *pro hac vice*)
                                            amcbride@wileyrein.com
                                            KEVIN P. ANDERSON (admitted *pro hac vice*)
                                            kanderson@wileyrein.com
                                            MEGAN BROWN (admitted *pro hac vice*)
                                            mbrown@wileyrein.com
                                            WILEY REIN LLP
                                            1776 K Street, NW
                                            Washington, D.C. 20006
                                            Tel: 202.719.7000
                                            Fax: 202.719.7049

                                            *Attorneys for Defendant Cellco Partnership d/b/a Verizon Wireless*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that all counsel of record who have consented to electronic service are being served with a copy of this document via the Court's EM/ECF system per Local Rule CV-5(a)(3) on this 15th Day of February 2013.  Any other counsel of record will be served by first class U.S. mail on this same date.

___/s/ Brian Riopelle_____
Brian Riopelle