# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
# Richmond Division

| | |
|---|---|
| PORTO TECHNOLOGY, CO., LTD., and PORTO TECHNOLOGY, LLC, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Case No. 3:12CV678–HEH ) |
| CELLCO PARTNERSHIP, d/b/a/ VERIZON WIRELESS, | ) ) ) |
| Defendant. | ) ) |

## MEMORANDUM OPINION
(Motion to Dismiss under Fed. R. Civ. P. 12(b)(1) for Lack of Standing
and Fed. R. Civ. P. 12(b)(7) for Failure to Join Indispensable Party)

This is a patent infringement action seeking damages for the infringement of two United States patents relating to computer-assisted mapping technologies licensed to Plaintiffs Porto Technology, Co., Ltd. and Porto Technology, LLC (collectively "Porto"). Defendant Cellco Partnership, d/b/a Verizon Wireless ("Verizon"), contends that Porto is in essence a limited licensee and therefore lacks standing to prosecute this claim without joining the two Korean owners of the patents in suit. Both Porto and Verizon have filed memoranda of law supporting their respective positions on the motion to dismiss. The Court heard oral argument on March 15, 2013. For the reasons that follow, this Court is of the opinion that Porto does not hold the requisite substantive rights to the patents in suit to satisfy the requirements of constitutional or statutory standing.

Article III, Section 2 of the United States Constitution limits the power of a United States District Court to the resolution of actual cases or controversies. *Lujan v.*

*Defenders of Wildlife*, 504 U.S. 555, 560–61, 112 S. Ct. 2130, 2136 (1992). A critical element of standing is injury in the constitutional sense, which must be both real and immediate, not conjectural or hypothetical. *City of Los Angeles v. Lyons*, 461 U.S. 95, 101–102, 103 S. Ct. 1660, 1665 (1983). "To demonstrate the minimal constitutional standing requirements have been satisfied, '[a] plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief.'" *Morrow v. Microsoft Corp.*, 499 F.3d 1332, 1338–39 (Fed. Cir. 2007) (quoting *Hein v. Freedom From Religion Found, Inc.*, 551 U.S. 587, 597–98, 127 S. Ct. 2553, 2562 (2007)).

Proof of standing turns on "whether the constitutional or statutory provision on which the claim rests properly can be understood as granting persons in the plaintiff's position a right to judicial relief." *Morrow*, 499 F.3d at 1339 (citations omitted).

The United States Patent Act, on which this lawsuit is based, provides that "[a] patentee shall have a remedy by civil action for infringement of his patent." 35 U.S.C. § 281 (2011). "However, if the patentee transfers all substantial rights under the patent, it amounts to an assignment and the assignee may be deemed the effective patentee under 35 U.S.C. § 281 for purposes of holding constitutional standing to sue another for patent infringement in its own name." *Sicom Sys. Ltd. v. Agilent Techs. Inc.*, 427 F.3d 971, 975 (Fed. Cir. 2005).

As the United States Court of Appeals for the Federal Circuit pointed out in *Spine Solutions, Inc. v. Medtronic Sofamor Danek USA, Inc.*, "[i]t is well-settled that '[o]nly a patent owner or an exclusive licensee can have constitutional standing to bring an

2

infringement suit; a non-exclusive licensee does not.'" 620 F.3d 1305, 1317 (2010) (citations omitted). The Court in *Spine Solutions* further elaborated that, "[t]o be an exclusive licensee for standing purposes, 'a party must have received, not only the right to practice the invention within a given territory, but also the patentee's express or implied promise that others shall be excluded from practicing the invention within the territory as well.'" *Id.*

Verizon maintains that Porto is neither the patent owner nor an exclusive licensee. Consequently, it contends that Porto lacks constitutional standing. Verizon's challenge is premised on its argument that Porto's license lacks three requisite substantive rights:

> Porto does not have the right to *practice* the invention, but only the ability to license and enforce the patents; (2) Porto lacks exclusivity because it has no categorical right to *exclude* any third party, because the Patent Owners have an unfettered ability to license any third parties free of charge; and (3) Porto has no right to *prevent* violations through enforcement lawsuits, but only the power to *license*.[1]

(Def.'s Reply in Supp. Mot. to Dismiss 5, ECF No. 62) (emphasis in original).

An analysis of the substantive rights vested in Porto obviously begins with a careful examination of the Exclusive Patent License Agreement ("License Agreement") with the patent owner. In its original form, the License Agreement was drafted in the Korean language. Both sides have submitted translations which are similar in their interpretation of key provisions. Porto has also included an Affidavit prepared by its Korean counsel providing his construction of the License Agreement language. It maintains that "it is the legal effect, under Korean law, of the Korean words used in the

---

[1] At oral argument, Verizon clarified the first deficiency to read "the ability to license and enforce royalty payments."

3

exclusive license which controls." (Pls.' Opp'n to Def.'s Mot. Dismiss 5, ECF No. 61.) This Court, however, need not delve beyond the text of the License Agreement to address the issue of standing. Because this is an infringement action being prosecuted in a U.S. District Court under U.S. patent laws and involves a licensing agreement to be executed within the United States, the law of the United States controls.[2] Although the licensing agreement at issue is styled "Exclusive Patent License Agreement," a close look at the language of its text raises significant questions as to the extent of the rights conveyed.[3]

Article 1.1 of the Agreement affords the licensee, Porto, the exclusive right to grant non-exclusive licenses to unspecified third parties. Article 1.2, however, prohibits transfer of such a license to third parties without the patent owner's consent. This restriction on transfer of the license without the patent owner's consent is reinforced in Article 3.2. This provision requires that the consent to transfer be confirmed in writing. Article 3.4 assures that Porto will grant "a non-exclusive license to [the patent owner] or any third parties [the patent owner] appoints free of charge upon [the patent owner's] request." (Def.'s Mem. in Supp. Mot. to Dismiss, Ex. 1 at 5.).) The clear import of the foregoing language is to provide limitations on the rights conveyed to Porto under the

---

[2] In its opposition memorandum, Porto suggests that under Article 6.2 of the License Agreement, entitled "Dispute Resolution," the law of the licensor's domicile should govern this Court's construction of the License Agreement. Under the translation provided by Plaintiffs, this provision provides only for the judicial resolution of disputes between the parties to the License Agreement "at the jurisdiction where [the] 'Licensor's' domicile is located." (Def.'s Mem. in Supp. Mot. to Dismiss, Ex. 1 at 6, ECF No. 57-1(Exclusive Patent License Agreement, Plaintiffs' translation, Article 6.2.).) The licensor's domicile is Korea, and Plaintiffs contend that a Korean court would obviously rely on Korean law. This provision, however, has no application to the issues at hand. The text of the License Agreement speaks for itself.
[3] At this stage of the proceedings, the Court will rely upon the Plaintiffs' translation of the License Agreement.

4

agreement. As Porto appears to concede, "Porto's exclusive license is 'unlimited' but for the specific reservations to the Patent Owners." (Pls.' Opp'n to Def.'s Mot. Dismiss 5.)

Although Porto seeks to minimize the significance of the restrictions on the rights conveyed by the patent owner, their effect is to render the License Agreement non-exclusive. The level of exclusivity required for standing is perhaps best captured by the U.S. Court of Appeals for the Federal Circuit in *Mann Foundation for Scientific Research v. Cochlear Corp.*, 604 F.3d 1354 (Fed. Cir. 2010). The Court in *Mann* noted that "the question is whether the license agreement transferred sufficient rights to the exclusive licensee to make the licensee the owner of the patents in question." *Id.* at 1360. Particularly problematic here is the patent owner's right under the License Agreement to veto any transfer of a sublicensing agreement entered into by Porto. The exclusivity of this right of alienation is further circumscribed by the patent owner's authority to dictate non-exclusive licensing of the patent to third parties of his choice—apparently without Porto's consent. *See Prima Tek II, L.L.C. v. A-Roo Co.*, 222 F.3d 1372, 1380 (Fed. Cir. 2000). These limitations preclude a finding of exclusivity. *Abbott Labs. v. Diamedix Corp.*, 47 F.3d 1128, 1136 (Fed. Cir. 1995).

Also conspicuously absent from the License Agreement is a conveyance to Porto of the exclusive right to bring suit to enforce the patent. Although Porto's Korean counsel in his affidavit contends that the right to enforce the patent is implied under

Korean law, he offers no authority to support this conclusion.[4] The unfettered right to conduct such litigation is a critical element of a truly exclusive license. *See AsymmetRX, Inc. v. Biocare Med., LLC*, 582 F.3d 1314, 1320–21 (Fed. Cir. 2009). It is also an essential prerequisite for prudential standing. *Morrow*, 499 F.3d at 1339.

Another vital characteristic of an exclusive license is the "right to practice the invention within a given territory." *Spine Solutions*, 620 F.3d at 1317 (citations omitted). The License Agreement in this case appears to authorize Porto to merely sublicense the patent in suit with the patent owner's consent and to collect royalties. The License Agreement is silent as to any right to practice the invention and enforce its exclusivity.

Even setting aside the absence of a specific right to practice or enforce the patent, the restriction on Porto's right to sublicense, coupled with the patent owner's retained right to independently license the patent, defeat constitutional, precedential and statutory standing. *See Textile Prods., Inc. v. Mead Corp.*, 134 F.3d 1481, 1484 (Fed. Cir. 1998).

Finding that Porto lacks standing to prosecute this infringement claim, the Court will afford Porto twenty-one (21) days to join the patent owners, Heung-Soo Lee and Ji-Soo Lee as Plaintiffs. *See Aspex Eyewear, Inc. v. Miracle Optics, Inc.*, 434 F.3d 1336, 1344 (Fed. Cir. 2006). If the patent owners are not joined as parties within twenty-one (21) days, the Defendant's Motion to Dismiss will be granted without prejudice.

---

[4] Apparently, under the Korean Patent Act, an exclusive licensee "can seek an injunctive relief as to the infringement". (Pls.' Opp'n to Def.'s Mot. Dismiss 4.) This Court is not convinced that Porto is an exclusive licensee under the License Agreement in this case.

An appropriate Order will accompany this Memorandum Opinion.

/s/
Henry E. Hudson
United States District Judge

Date: March 19, 2013
Richmond, VA